UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA
                                :
        -v.-                     :          INDICTMENT
                                :          12 Cr. __
                                :
THOMAS C. CONRADT, and          :
DAVID J. WEISHAUS,
                                :    **12 CRIM 887**
        Defendants.             :
                                :
- - - - - - - - - - - - - - - - x

DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: NOV 2 8 2012

## COUNT ONE

(Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### The Defendants and Other Relevant Parties

1.    At all times relevant to this Indictment, THOMAS C.
CONRADT, the defendant, worked as a stock broker in the Manhattan
offices of a Connecticut-based securities trading firm
("Securities Trading Firm-1").

2.    At all times relevant to this Indictment, DAVID J.
WEISHAUS, the defendant, worked as a stock broker at Securities
Trading Firm-1.  WEISHAUS and THOMAS C. CONRADT, the defendant,
were close friends who had attended law school together.  While
working together at Securities Trading Firm-1, WEISHAUS and
CONRADT regularly communicated with each other by exchanging
instant messages.

3.    At all times relevant to this Indictment, CC-1 and
CC-2, co-conspirators not charged as defendants herein, were stock

**JUDGE CARTER**

brokers in the Manhattan office of Securities Trading Firm-1 and part of a circle of friends with THOMAS C. CONRADT and DAVID J. WEISHAUS, the defendants, and others.

4.   At all times relevant to this Indictment, International Business Machines ("IBM") was a publicly-traded global technology and services company based in Armonk, New York.

5.   Before it was acquired by IBM on or about October 2, 2009, as described in more detail below, SPSS Inc. ("SPSS") was a publicly-traded software company based in Chicago, Illinois. SPSS's common stock traded on the Nasdaq stock exchange.

6.   At all times relevant to this Indictment, the "New York Law Firm" was a large Manhattan-based law firm that had a significant mergers and acquisitions practice.

7.   At all times relevant to this Indictment, Attorney-1 was a citizen of New Zealand who lived in Manhattan and worked as a corporate lawyer for the New York Law Firm in Manhattan.

8.   At all times relevant to this Indictment, THOMAS C. CONRADT, the defendant, shared an apartment in Manhattan with a co-conspirator not named as a defendant herein ("CC-3").  CC-3 was a citizen of Australia.  CC-3 worked primarily in Stamford, Connecticut for an international financial services firm as a research analyst.

**Duty of Trust and Confidence Owed by CC-3 to Attorney-1**

9.   At all times relevant to this Indictment, CC-3 and Attorney-1 were close friends who had a history, pattern and practice of sharing confidences with each other relating to their careers, families, relationships, and plans for the future.  CC-3 and Attorney-1 sought advice from each other and shared common interests, a common cultural background, and the common experience of being single men who worked in demanding industries and lived far from their home countries of, respectively, Australia and New Zealand.  Attorney-1 considered CC-3 to be his closest friend in New York City.

10.   At various times, Attorney-1 and CC-3 exchanged personal confidences as well as non-public information concerning their jobs.  For example, on one occasion when CC-3 and Attorney-1 were at a comedy club together in or about December 2008, CC-3 handed his Blackberry to Attorney-1 so that Attorney-1 could read an e-mail that CC-3 had sent to colleagues at his firm in which he provided advice about the stock market.

**Attorney-1 Learns Inside Information**
**About the IBM/SPSS Transaction**

11.   In or about the spring of 2009, the New York Law Firm represented IBM in connection with an offer by IBM to acquire SPSS (the "IBM/SPSS Transaction").  The New York Law Firm assigned various partners and associates to work on the matter.  Given the confidential nature of the IBM/SPSS Transaction, and the risk of

3

insider trading if the details of the transaction leaked before it was publicly announced, the New York Law Firm took various precautions to maintain its secrecy.  Among other things, the New York Law Firm used code names for IBM and SPSS in the documents that it prepared in connection with the IBM/SPSS Transaction.  At all relevant times, the New York Law Firm maintained a strict written policy prohibiting any person connected with the firm from, among other things, "[r]evealing 'inside' information to anyone else except on a strict 'need to know' basis."  On or about September 29, 2008, Attorney-1 certified to the New York Law Firm in writing that he had read and understood this policy.

    12.  On or about May 26, 2009, the New York Law Firm assigned Attorney-1 to work on the IBM/SPSS Transaction. Thereafter, Attorney-1 learned material non-public information concerning the proposed transaction (hereinafter, "Inside Information"), including the names of the parties involved, the general nature of the transaction, and the share price at which IBM proposed to buy SPSS ($50 per share).

## CC-3 Breaches his Duty of Trust and Confidence to Attorney-1 and Buys SPSS Securities Using the Inside Information

    13.  On or about May 31, 2009, following Attorney-1's assignment to the IBM/SPSS Transaction, Attorney-1 met his close friend, CC-3, for brunch at a restaurant in Manhattan.  During the meeting, Attorney-1 confided in CC-3 that he was feeling significant stress as a result of being assigned to the IBM/SPSS

Transaction.  Attorney-1 told CC-3, among other things, that
Attorney-1 worried that he (Attorney-1) had limited experience
working on transactions like the IBM/SPSS Transaction, that one of
the attorneys at the New York Law Firm working on the deal was
known to be particularly demanding, and that Attorney-1's
performance on the assignment would affect his professional
standing at the New York Law Firm.

14.  In the course of describing his personal and
professional concerns to CC-3, Attorney-1 told CC-3 that IBM was
negotiating to acquire SPSS for a significant premium over its
market price.  Attorney-1 knew that he was not permitted to
disclose this Inside Information to CC-3, but Attorney-1 expected
that CC-3 would keep it confidential because of, among other
reasons, their history, pattern and practice of sharing
confidences, and CC-3's training as a research analyst at CC-3's
international financial services firm.  That training included,
among other things, compliance training that emphasized the
prohibition on insider trading and the risk of criminal sanctions
for such conduct.  CC-3 knew and reasonably should have known that
Attorney-1 expected CC-3 to maintain the confidentiality of this
Inside Information about the IBM/SPSS Transaction.

15.  As of the date of this brunch (on or about May 31, 2009), the fact that IBM had offered to buy SPSS, and the fact that IBM had offered to buy SPSS for a significant premium, were not publicly known.

**CC-3 and Others Use the Inside Information To Trade in SPSS**

16.  On or about June 3, 2009, CC-3 bought approximately 1,500 shares of SPSS common stock for approximately $34.20 per share in his personal brokerage account on the basis of Inside Information concerning the IBM/SPSS Transaction.

17.  In or about June 2009, CC-3 told THOMAS C. CONRADT, the defendant, the Inside Information regarding the IBM/SPSS Transaction that CC-3 had learned from Attorney-1.  Also in or about June 2009, CONRADT communicated the same Inside Information to DAVID J. WEISHAUS, the defendant.

18.  Beginning on or about June 24, 2009, DAVID J. WEISHAUS, the defendant, began purchasing SPSS common stock and call options in his personal brokerage account on the basis of Inside Information concerning the IBM/SPSS Transaction.  For example, on or about June 25, 2009, WEISHAUS bought approximately 50 SPSS call option contracts at a strike price of $40, with an expiration date of September 19, 2009, in his personal brokerage account on the basis of Inside Information concerning the IBM/SPSS Transaction.  Each of these call option contracts represented the right, but not the obligation, to purchase 100 shares of SPSS

6

common stock at the strike price before the expiration of the contracts.

19.   Beginning on or about June 26, 2009, THOMAS C. CONRADT, the defendant, began purchasing shares of SPSS common stock in his personal brokerage account on the basis of Inside Information concerning the IBM/SPSS Transaction.  For example, on or about June 26, 2009, CONRADT bought approximately 30 shares of SPSS common stock for approximately $32.67 per share in his personal brokerage account on the basis of Inside Information concerning the IBM/SPSS Transaction.

20.   On or about July 1, 2009, THOMAS C. CONRADT and DAVID J. WEISHAUS, the defendants, exchanged numerous instant messages.  In one exchange, WEISHAUS wrote to CONRADT, "somebody is buying spss . . . we should get [CC-1] to buy a fuckload [of SPSS shares] . . . like, [CC-1], buy 100000 shares."  CONRADT responded, "jesus don't tell anyone else . . . we gotta keep this in the family."  WEISHAUS answered, "dude, no way.  i dont want to go to jail fuck that . . . martha stewart spent 5 months in the slammer . . . and they tried to fuck the mavericks owner."  Later that same day, WEISHAUS wrote to CONRADT, "jesus, we need spss to run up i need that lexus."

21.   Later that same day (July 1, 2009), THOMAS C. CONRADT, the defendant, sent an instant message to CC-2 asking, "did you buy options or the stock for our horse, btw?"  CC-2

responded, "no havent yet, im a dick, been distracted."  When CONRADT and DAVID J. WEISHAUS, the defendant, communicated with each other and other members of their circle of friends about SPSS, they referred to it as their "horse."

    22.  On or about July 10, 2009, THOMAS C. CONRADT and DAVID J. WEISHAUS, the defendants, again exchanged instant messages.  WEISHAUS wrote to CONRADT, "we need some turn around on spss."  CONRADT responded, "yeah i called [CC-3], gonna get more details tonight he was at work, couldn't talk[.]"

    23.  On or about July 22, 2009, on the basis of Inside Information concerning the IBM/SPSS Transaction, CC-3 purchased, in his personal brokerage account, approximately 29 SPSS call option contracts at a strike price of $35, with an expiration date of September 19, 2009.

    24.  On or about July 23, 2009, beginning at approximately 3:21 p.m., on a day when the trading volume in SPSS common stock was significantly higher than the recent average, DAVID J. WEISHAUS, the defendant, wrote to THOMAS C. CONRADT, the defendant, "dude, horsey is moving . . . horsey can run! . . . come horsey, come on horsey!!!!  RUUUUUNNN!!!!!"  CONRADT responded, "what's going on with the horse?  going up?"

    25.  Later that same day (July 23, 2009), THOMAS C. CONRADT, the defendant, asked DAVID J. WEISHAUS, the defendant, to buy SPSS call options for CONRADT.  WEISHAUS declined.  In

response, CONRADT wrote, "wtf, i'm setting this deal up for
everyone . . . makin everyone rich." WEISHAUS responded,
"[Another individual] is gonna put in 50k sept options." CONRADT
then wrote, "holy fuck . . . god [CC-3] told me not to tell anyone
. . . big mistake." WEISHAUS then noted, "eh, we'll get rich."
In response, CONRADT wrote, "in any case i'm just glad to
contribute actually you guys have done a lot for me, esp you and
[another individual] i didn't think for a second i wouldn't tell
you." WEISHAUS answered, "this is gonna be sweet, we just need
this thing to pop next week or im out." CONRADT responded, "it's
gonna blow up." WEISHAUS responded, "any[way], lets not type."

## CC-3 Admits to Attorney-1 That He Had
### Traded on the Inside Information

        26.  On or about July 23, 2009, CC-3 visited Attorney-1
at his (Attorney-1's) apartment in Manhattan.  At that time, CC-3
told Attorney-1 that he (CC-3) had purchased SPSS common stock and
call options on the basis of the Inside Information that Attorney-
1 had disclosed to CC-3 at their brunch on or about May 31, 2009.
CC-3 expressed concern to Attorney-1 that, since he had bought a
significant volume of SPSS call options at a favorable price, the
transactions would attract attention.  CC-3 sought Attorney-1's
advice on the situation and told Attorney-1 that CC-3 would suffer
a loss if he unwound his long position in SPSS at that time.
Attorney-1 was furious with CC-3 and urged CC-3 to sell his SPSS
shares and options immediately.  CC-3 and Attorney-1 discussed

various ways in which CC-3 could cancel or unwind his SPSS options position without attracting attention.  CC-3 apologized to Attorney-1 for trading on the information Attorney-1 had told him at the brunch meeting.

27.  On or about July 24, 2009, CC-3 sold the approximately 29 SPSS call option contracts that he had purchased on or about July 22, 2009.  Thereafter, on or about July 27, 2009, CC-3 sold approximately 1,000 of the approximately 1,500 SPSS shares that he had purchased on or about June 3, 2009.

### The Public Announcement of the IBM/SPSS Transaction

28.  On or about July 28, 2009, at approximately 7:31 a.m., IBM and SPSS publicly announced the IBM/SPSS Transaction.  That same day, SPSS's share price closed at approximately $49.45, up approximately 41 percent from the prior day's closing price of approximately $35.09 per share.

### CONRADT, WEISHAUS, CC-1, CC-2, and CC-3 Profit From Trading in SPSS

29.  On or about July 28, 2009, when IBM and SPSS publicly announced their transaction, THOMAS C. CONRADT, the defendant, held approximately 170 shares of SPSS common stock that he had purchased on the basis of Inside Information concerning the IBM/SPSS Transaction.  CONRADT sold those shares on or about July 29, 2009, yielding a profit of approximately $2,538.

30.  On or about July 28, 2009, DAVID J. WEISHAUS, the defendant, held various SPSS call options that he had purchased on

10

the basis of Inside Information concerning the IBM/SPSS
Transaction.  WEISHAUS sold these options between August 2009 and
September 2009, yielding a profit of approximately $129,290.

    31.  Beginning on or about June 25, 2009 up through and
including on or about July 22, 2009, CC-1 purchased various SPSS
call options on the basis of Inside Information concerning the
IBM/SPSS Transaction.  After the IBM/SPSS Transaction was publicly
announced, CC-1 sold these call options for a profit of
approximately $629,954.

    32.  Beginning on or about July 22, 2009 up through and
including on or about July 27, 2009, CC-2 purchased various SPSS
call options on the basis of Inside Information concerning the
IBM/SPSS Transaction.  After the IBM/SPSS Transaction was publicly
announced, CC-2 sold these call options for a profit of
approximately $254,360.

    33.  On or about the day of the public announcement of
the IBM/SPSS Transaction, July 28, 2009, CC-3 held approximately
500 shares of SPSS common stock that he had purchased on the basis
of Inside Information concerning the IBM/SPSS Transaction.  CC-3
held these shares through the completion of the IBM/SPSS
Transaction, and then, on or about October 5, 2009, CC-3 sold
these shares, yielding a profit of approximately $7,900.

## The SEC Investigates Insider Trading in SPSS

34.   In or about October 2010, Attorney-1 learned from another lawyer at the New York Law Firm that the U.S. Securities and Exchange Commission (the "SEC") was investigating insider trading in relation to the IBM/SPSS Transaction.  Shortly thereafter, Attorney-1 informed CC-3 about the SEC investigation.

35.   In or about October or November 2010, CC-3 told Attorney-1 that CC-3 had retained some SPSS shares at the time of the public announcement of the IBM/SPSS Transaction, and thereby earned a profit of approximately $8,000.

36.   In or about November 2010, CC-3 told Attorney-1 that he had not only profited on Attorney-1's Inside Information but also disclosed it to CC-3's roommate, THOMAS C. CONRADT, the defendant, before the transaction was publicly announced.  CC-3 told Attorney-1 that CC-3 believed CONRADT had taken a large position in SPSS before the announcement and had, in turn, shared the Inside Information with others.  CC-3 repeatedly apologized to Attorney-1 for disclosing the information concerning the IBM/SPSS Transaction to CONRADT.

37.   Later in or about November 2010, Attorney-1 visited CC-3 at CC-3's apartment in Manhattan.  At that time, Attorney-1 saw that CC-3 was packing up his belongings to leave New York City.  CC-3 told Attorney-1 that CC-3 had quit his job and was returning to Australia in light of the SEC investigation.  CC-3

told Attorney-1 that he knew that insider trading can result in jail sentences and referred to the criminal prosecution of Martha Stewart.

## STATUTORY ALLEGATIONS

### The Conspiracy

38.   From in or about June 2009 up through and including in or about July 2009, in the Southern District of New York and elsewhere, THOMAS C. CONRADT and DAVID J. WEISHAUS, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5 and Section 240.10b5-2(b)(1)&(2).

### Object of the Conspiracy

39.   It was a part and object of the conspiracy that THOMAS C. CONRADT and DAVID J. WEISHAUS, the defendants, and others known and unknown, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, willfully and knowingly would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing

13

devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5 and Section 240.10b5-2(b)(1)&(2).

### Means And Methods Of The Conspiracy

40.  Among the means and methods by which THOMAS C. CONRADT and DAVID J. WEISHAUS, the defendants, carried out the conspiracy were the following:

a.  Attorney-1, without the permission of the New York Law Firm, disclosed to CC-3 Inside Information about the IBM/SPSS Transaction.

b.  CC-3 misappropriated Inside Information from Attorney-1 concerning the IBM/SPSS Transaction in violation of the duty of trust and confidence that CC-3 owed to Attorney-1, with whom CC-3 had a history, pattern and practice of sharing personal and professional confidences, such that CC-3 knew that he should not trade on the Inside Information or share it with others.

c.  CC-3 shared Inside Information concerning the IBM/SPSS Transaction with his roommate, CONRADT.

14

d.    CONRADT, in turn, shared Inside Information concerning the IBM/SPSS Transaction with WEISHAUS.

e.    While aware of the Inside Information, CONRADT, WEISHAUS, CC-1, CC-2, and CC-3 bought SPSS call options and/or common stock before the public announcement of the IBM/SPSS Transaction; they later profited because the stock price of SPSS rose considerably upon the public announcement of the IBM/SPSS Transaction on July 28, 2009.

**Overt Acts**

41.  In furtherance of the conspiracy and to effect the illegal object thereof, THOMAS C. CONRADT and DAVID J. WEISHAUS, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about June 25, 2009, WEISHAUS purchased approximately 50 SPSS call option contracts on the basis of Inside Information concerning the IBM/SPSS Transaction.

b.    On or about June 26, 2009, CONRADT, while working at the offices of Securities Trading Firm-1 in Manhattan, purchased approximately 30 shares of SPSS common stock on the basis of Inside Information concerning the IBM/SPSS Transaction.

c.    On or about July 1, 2009, CONRADT and WEISHAUS exchanged instant messages about the Inside Information.

15

d.   On or about July 23, 2009, CONRADT and WEISHAUS exchanged instant messages about the Inside Information.

(Title 18, United States Code, Section 371.)

### COUNTS TWO THROUGH FOUR

(Securities Fraud)

The Grand Jury further charges:

42.   The allegations contained in paragraphs 1 through 37 and 40 through 41 above are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

43.   On or about the trade dates set forth below, in the Southern District of New York and elsewhere, THOMAS C. CONRADT, the defendant, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, willfully and knowingly did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to

16

wit, CONRADT executed the securities transactions listed below on the basis of Inside Information concerning the IBM/SPSS Transaction:

| COUNT | TRADE DATE | TRANSACTION |
|-------|-----------|-------------|
| TWO | 6/26/09 | Purchased 30 shares of SPSS common stock at $32.67 per share |
| THREE | 7/23/09 | Purchased 85 shares of SPSS common stock at $34.98 per share |
| FOUR | 7/27/09 | Purchased 55 shares of SPSS common stock at $34.90 per share |

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2(b)(1)&(2); and Title 18, United States Code, Section 2.)

### COUNTS FIVE THROUGH SEVEN

(Securities Fraud)

The Grand Jury further charges:

44.  The allegations contained in paragraphs 1 through 37 and 40 through 41 above are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

45.  On or about the trade dates set forth below, in the Southern District of New York and elsewhere, DAVID J. WEISHAUS, the defendant, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, willfully and knowingly did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal

17

Regulations, Sections 240.10b-5 and 240.10b5-2, by: (a) employing

devices, schemes and artifices to defraud; (b) making untrue

statements of material fact and omitting to state material facts

necessary in order to make the statements made, in the light of

the circumstances under which they were made, not misleading; and

(c) engaging in acts, practices and courses of business which

operated and would operate as a fraud and deceit upon persons, to

wit, WEISHAUS executed the securities transactions listed below on

the basis of Inside Information concerning the IBM/SPSS

Transaction:

| COUNT | TRADE DATE | TRANSACTION |
|-------|-----------|-------------|
| FIVE | 6/25/09 | Purchased 50 SPSS call option contracts with a $40 strike price for $0.55 per contract, expiring on 9/19/09 |
| SIX | 6/29/09 | Purchased 50 SPSS call option contracts with a $35 strike price for $0.25 per contract, expiring on 7/18/09 |
| SEVEN | 7/22/09 | Purchased 100 SPSS call option contracts with a $40 strike price for $0.60 per contract, expiring on 9/19/09 |

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17,
Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-
2(b)(1)&(2); and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

46.  As a result of committing one or more of the

foregoing securities fraud offenses alleged in Counts One through

Seven of this Indictment, THOMAS C. CONRADT and DAVID J. WEISHAUS,

the defendants, shall forfeit to the United States pursuant to

Title 18, United States Code, Section 981(a)(1)(C) and Title 28,

United States Code Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud offenses alleged in Counts One through Seven of this Indictment, including but not limited to the following:

<u>Money Judgment</u>

a.   At least a sum of money in United States currency that constitutes or was derived from proceeds traceable to the commission of the securities fraud offenses alleged in Counts One through Seven of this Indictment.

**<u>Substitute Assets Provision</u>**

47.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(i)      cannot be located upon the exercise of due diligence;

(ii)     has been transferred or sold to, or deposited with, a third party;

(iii)    has been placed beyond the jurisdiction of the court;

(iv)     has been substantially diminished in value; or

(v)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of said defendant up to the value of the

forfeitable property described above.

> (Title 15, United States Code, Sections 78j(b) & 78ff;
> Title 18, United States Code, Sections 371 & 981;
> Title 21, United States Code, Section 853(p);
> Title 28, United States Code, Section 2461;
> and Title 17, Code of Federal Regulations,
> Sections 240.10b-5 and 240.10b5-2(b)(1)&(2).)

FOREPERSON

PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

### - v. -

### THOMAS C. CONRADT and
### DAVID J. WEISHAUS,

### Defendants.

### INDICTMENT

(18 U.S.C. §§ 2, 371; Title 15, United
States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations,
Sections 240.10b-5 and 240.10b5-2)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

_Kathleen Surcich (deputy)_
Foreperson.

11/28/12  Filed Sealed  Indictment, warrant issue

COTJ USMJ